

FILED & JUDGMENT ENTERED
David E. Weich

Oct  07  2010

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



_____
George R. Hodges
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Adversary No.:  10-03200

IN THE MATTER OF:

STONEBRIDGE OF MINT HILL, LLC,

      DEBTOR

Case No:  10-31578
Chapter 11

STONEBRIDGE OF MINT HILL, LLC, and
W. JEFFERSON LEATH,

    Plaintiffs,

      vs.

NVR, INC.,

    Defendant.

**MEMORANDUM OPINION AND
ORDER GRANTING NVR, INC.'S
12(B)(6) MOTION TO DISMISS**

This matter came before the Court on September 17, 2010, for hearing on Defendant NVR, Inc.'s

("NVR") Motion to Dismiss the complaints of Plaintiffs Stonebridge of Mint Hill, LLC

("Stonebridge" or the "Debtor") and W. Jefferson Leath ("Leath"), pursuant to Bankruptcy Rule

7012(b) and Federal Rule 12(b)(6) of the Rules of Civil Procedure.  Kurt E. Lindquist II and

Christopher M. Olds appeared as counsel for NVR; Timothy W. Bouch appeared as counsel for

Leath; and Richard S. Wright appeared as counsel for the Debtor..  For the reasons set forth

below,    Court    finds    and    concludes    that    Stonebridge's    and    Leath's

1

claims for breach of contract and indemnity against NVR do not state plausible claims for relief

as a matter of law, and that NVR's Motion to Dismiss should be **GRANTED**.

<u>**BACKGROUND**</u>

This suit arises from a contract dispute between the Plaintiffs, Stonebridge and Leath, and

Defendant, NVR.  Stonebridge, as successor-in-interest to Grace Development Corporation, LLC

("Grace") and as Seller, and NVR, as Purchaser, were parties to a September 4, 2004 "Contract

to Purchase Real Estate" (the "Contract") for the development of a residential subdivision

located in Mint Hill, North Carolina, known as Stonebridge of Mint Hill (the "Subdivision").[1]

(*See* Stonebridge Compl., ¶ 42).  Stonebridge was the developer of the Subdivision and NVR

was the home builder in the Subdivision.  (*See* Contract Preamble).  Leath was a partner/investor

in Stonebridge and was a financial guarantor for Stonebridge on its loan with Wachovia Bank,

N.A. ("Wachovia") for development of the Subdivision.  (*See* Leath Compl., ¶ 46).

Pursuant to the Contract, Stonebridge developed lots and infrastructure in the Subdivision

and, upon completion of such improvements, sold the developed lots to NVR pursuant to a "take

down" schedule set forth in the Contract.  (*See* Stonebridge Compl, ¶ 42; Contract, ¶ 3(b)).  The

Contract provided that NVR purchase lots in the Subdivision on a quarterly basis.  (*See* Contract,

¶¶ 3(b) and 3(d)).  Once NVR purchased a lot or group of lots, it would begin building single

family homes on the lots for resale while, simultaneously, Stonebridge continued to develop

various phases of the Subdivision.

Insofar as they concern the issues before this Court, the parties included three critical

terms in the Contract.  First, the Contract required that NVR pay an earnest money deposit (the

"Binder") of some $516,000 to Stonebridge in order to secure NVR's exclusive right to purchase

---

[1] In February, 2005, Stonebridge replaced Grace as Seller through an amendment to the Contract.

lots at the Subdivision. (*See* Contract, ¶¶ 1(c) and 3(a)). Second, the Contract included a liquidated damages clause allowing NVR to stop purchasing lots at the Subdivision and withdraw from the Subdivision in exchange for surrendering the Binder. (*See* Contract, ¶ 18). Third, the Contract included an indemnity provision secured by NVR's purchase of a $1,000,000 liability insurance policy against third-party claims. (*See* Contract, ¶ 13(d)).

The Contract was amended several times after its initial execution. In May 2008, the parties amended the Contract to remove some 41 lots from the Contract to allow Stonebridge to sell lots in the Subdivision to developers other than NVR. (*See* "4th Amendment", Exh. A).

In October 2008, NVR elected to stop purchasing lots from Stonebridge and, pursuant to the Contract's liquidated damages clause, NVR surrendered the Binder to Stonebridge. (*See* Stonebridge Compl, ¶ 46). In April 2009, Stonebridge failed to meet its payment obligations under its construction loan with Wachovia for the development of the Subdivision. (*See* Wachovia Compl., ¶ 20; Stonebridge Ans., ¶ 7; Stonebridge Compl., ¶ 45, Docket Entry #1).

On March 4, 2010, Wachovia filed suit against Stonebridge and Leath (and other personal guarantors) in the North Carolina Superior Court for Mecklenburg County alleging breaches of the promissory note, personal guarantees and the associated loan documents. (*See* Notice of Removal, Docket Entry #1). In turn, Stonebridge and Leath answered Wachovia's complaint and filed third-party complaints against NVR. (*See* Notice of Removal, Docket Entry #1). In its third-party complaint, Stonebridge makes two claims: first, that NVR breached the Contract by "walking off the job" and that such breach caused Stonebridge, in turn, to default on its loan with Wachovia; and, second, that NVR should indemnify Stonebridge, pursuant to the express terms of the indemnity provision contained in the Contract, for all claims that Wachovia makes against it under the loan documents. (*See* Stonebridge Compl., ¶¶ 41-53).

Leath, in his third-party complaint, alleges that he is a third-party beneficiary under the Contract. (*See* Leath Compl. ¶ 55). Thus, Leath alleges breach of contract and indemnity claims against NVR on the theory that as both a third-party beneficiary and indemnitee NVR should indemnify him for any losses he incurs as a result of Wachovia's claims against him as a guarantor of Stonebridge's loan. (*See* Leath Compl. ¶¶ 45-58). NVR, for its part, denies any liability to either Stonebridge or Leath.

On June 3, 2010, Stonebridge filed a Chapter 11 bankruptcy petition in this Court. (*See* Notice of Removal, Docket Entry #1). On July 27, 2010, NVR removed Stonebridge's and Leath's claims to this Court pursuant to 28 U.S.C. § 1452(a). (*Id.*) On September 2, 2010, NVR filed its motion to dismiss the claims of Stonebridge and Leath. (*See* NVR's Motion to Dismiss, Docket Entry #7).

## DISCUSSION

### I.     LEGAL STANDARD

Once a case is removed to federal court, the court must follow the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 81(c)(1); Fed.R.Bankr. 9027(g). Under the federal standard for Rule 12(b)(6) motions to dismiss, the motion should be granted if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of its claim that entitles it to relief. *See Edwards v. City of Goldsboro*, 178 F. 3d 231, 244 (4th Cir. 1999). The Supreme Court has held that, "[t]o survive a Rule 12(b)(6) motion, '[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). In reviewing the plaintiff's claims, the Court "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences,

4

unreasonable conclusions, or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir.

2008).

Moreover, the court need not accept "allegations that contradict matters properly subject

to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).  While

Plaintiffs here have not attached copies of the Contract in dispute, the Court may consider the

Contract and its amendments when deciding NVR's Motion to Dismiss because consideration of

documents not attached to the complaint is proper if they are integral to the complaint and

authentic.  *See Secretary of State for Defense v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th

Cir. 2007).  The Court will now consider the Plaintiffs' claims against the standard articulated in

*Twombly* regarding NVR's motion to dismiss for failure to state a claim.

## II. STONEBRIDGE'S CLAIMS AGAINST NVR

### A.   Stonebridge's Breach of Contract Claim

Stonebridge claims that NVR breached the Contract by "willfully breach[ing] its contract

and walk[ing] off the project, leaving Stonebridge and its investors and principals to face the

consequences."  (*See* Stonebridge Compl., ¶ 46).  Further, Stonebridge alleges that it has

incurred as a result of NVR's action, the . . . "total loss of investment, foreclosure, suits on

guarantees, impairment of credit, threats of personal judgment, extensive legal fees to name a

few of the damages which NVR's willful and unexcused Breach of Contract have caused the

Defendants in this matter."  (*See* Stonebridge Compl., ¶ 47).

NVR argues, however, that Stonebridge's breach of contract claim is foreclosed by the

liquidated damages provision set forth in paragraph 18 of the Contract.  Paragraph 18 entitled

"**Purchaser Default**" provides that:

> If the Purchaser fails to purchase any Lots or otherwise defaults under any
> other provision of this Agreement and if the Purchaser has not cured such
> default within forty-five (45) days of Purchaser's receipt of notice thereof,

> Seller shall have the right, as its only remedy, to terminate this Agreement and retain the Binder or its remaining portion as liquidated damages, whereupon Purchaser and Seller shall be released of any further obligations hereunder except for those post-settlement obligations found in paragraph 12 hereof.

(*See* Contract, ¶ 18). The "Binder" was an earnest money deposit of some $516,000 that NVR paid to Stonebridge in order to secure its right to purchase lots in the Development. (*See* Contract, ¶¶ 1 and 3(a)). NVR contends that paragraph 18 is a liquidated damages provision which dictates the rights of the parties upon a default by NVR as the Purchaser under the Contract. (*See* NVR Ans., Aff. Defense #4, Docket Entry #1). Thus, when Stonebridge alleges that NVR "walk[ed] off the job" and thus defaulted, NVR contends that the only remedy afforded Stonebridge is that it may retain the Binder. *(Id.)*

Under North Carolina law, parties to a contract have a broad right to stipulate in their agreement the amount of damages recoverable in the event of a breach (a liquidated damages clause), and the courts will enforce it generally. *Seven Seventeen HB Charlotte Corp. v. Shrine Bowl of the Carolinas, Inc*., 182 N.C.App 128, 641 S.E.2d 711 (2007). Generally, the burden of establishing that a liquidated damages clause is unreasonable and, therefore invalid, falls to the party seeking to invalidate the provision. *Id.* However, a nonbreaching seller of real estate cannot challenge a liquidated damages clause as being unreasonable where it is paid the liquidated sum it agreed to accept in the event of the buyer's default. *See City of Kinston v. Suddreth*, 266 N.C. 618, 620, 146 S.E.2d 660, 662 (1966); *Azalea Garden Board and Care, Inc. v. Vanhoy,* 2009 NCBC 8, 2009 WL 691465, at *7 (Tennille, J., N.C. Super., 2009).

Here, Stonebridge negotiated with NVR and agreed to the liquidated damages clause set forth in paragraph 18 of the Contract. Under this clause, Stonebridge agreed that NVR could cease purchasing lots in the Subdivision and, if it did so, Stonebridge could retain the Binder as

6

its only remedy.  The case law in North Carolina is replete with decisions wherein a buyer agreed to a deposit of earnest money with the seller in order to secure its right to purchase certain property with the caveat that if such sale is not completed, the seller may keep the earnest money deposit.  *See City of Kinston*, *supra* (liquidated damages provision in contract to purchase city hall property where damages limited to 10% deposit put up by buyer was enforceable); *Johnson v. Smith, Scott & Assoc., Inc.*, 335 S.E.2d 205 (N.C. App. 1985) (liquidated damages provision limiting damage to earnest money deposit of 1.7% of the purchase price of home was enforceable); *Azalea Garden, supra* (liquidated damages clause limited damages to deposit money representing 0.3% of purchase price of nursing home was enforceable).

Thus, when a seller of real estate agrees to such a provision and the contemplated sale does not occur, he shall not later complain that the liquidated damages provision is insufficient or invalid.  "While plaintiff might have intended another result [not to be bound by the earnest money deposit as its sole remedy], that was the effect of the contract which plaintiff accepted and signed."  *See Suddreth*, 266 N.C. at 620, 146 S.E.2d at 662.  To allow otherwise would promote substantial litigation regarding liquidated damages clauses and "when parties defaulted on a real estate purchase contract…the courts would be constantly required to determine when an earnest money forfeiture provision was a penalty."  *Azalea Garden* at *7.  Thus, because of the liquidated damages clause, there is no set of facts that Stonebridge has pled in its complaint or which it could plead in an amended complaint that would support a plausible claim for relief against NVR.  Therefore, Stonebridge's breach of contract claim fails as a matter of law and is dismissed.

### B.    Stonebridge's Indemnity Claim

For its indemnity claim, Stonebridge alleges that NVR agreed in the Contract to indemnify it "for any liability, loss or damage to persons or property caused by NVR."  (*See*

7

Stonebridge Compl., ¶ 52).  Stonebridge goes on to allege that because of NVR's conduct in "walk[ing] off the job" that NVR caused the ensuing default by Stonebridge on its loan to Wachovia and, thus, should indemnify Stonebridge (and others) for the "total loss of their investment and reasonable expectation of profits."  (*Id.*)  Stonebridge cites to paragraph 13(d) of the Contract for support that NVR should indemnify it for such losses.

NVR contends that Stonebridge's reading of the Contract's indemnity provision:  (1) is unsupported by the plain language of the provision; (2) renders the liquidated damages clause set forth in paragraph 18 of the Contract a nullity; and (3) is, in fact, a direct claim for damages for which the derivative liability reserved for claims of indemnity is inapplicable.[2]  Thus, NVR contends that there is no duty for it to indemnify Stonebridge for claims that Wachovia may bring against Stonebridge for Stonebridge's default under the loan agreements or any associated damage.

Paragraph 13(d) of the Contract entitled "Liability – Indemnification by Purchaser; Insurance" provides, in pertinent part:

> Purchaser [NVR] agrees to indemnify and hold Seller [Stonebridge] harmless from any liability, loss or damage to persons or property, including reasonable attorneys' fees and related costs and expenses, caused by Purchaser [NVR], its agents and employees.  Purchaser [NVR] shall maintain in full force and effect liability insurance covering at least $1,000,000 in damage to property and persons resulting from or connected with such activity. . . Purchaser [NVR] shall provide Seller [Stonebridge] . . . a Certificate of Insurance confirming such coverage [upon request]. . .

(Contract, ¶ 13(d)).  There is no dispute that the foregoing provision is an indemnity clause.  Indeed, it is the reciprocal provision of paragraph 13(c) of the Contract wherein Stonebridge

---

[2] In addition, NVR contends that its indemnification obligations expired upon termination of the Contract pursuant to the terms of paragraphs 12 and 18 of the Contract.  (*See* NVR Ans., Aff. Def. # 3, Docket Entry # 1).  Because the Court holds below that the plain terms of the indemnity are inapplicable to Wachovia's claims against Stonebridge, there is no need for the Court to examine this contention further.

agrees to indemnify NVR for liability and to provide insurance for any liability, loss and damage to persons or property.

Where a contract's language is plain and unambiguous, it can be interpreted as a matter of law by the court. *Schenkel & Shultz, Inc. v. Herman F. Fox & Assoc., Inc.*, 362 N.C. 269, 273, 658 S.E.2d 918, 921 (2008). "[I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." *Majestic Cinema Holdings, LLC v. High Point Cinema, LLC*, 191 N.C.App. 163, 166, 662 S.E.2d 20, 22 (2008)(quoting *Duke Energy Corp. v. Malcolm*, 178 N.C.App. 62, 65, 630 S.E.2d 693, 695 (2006)).

In construing the meaning of the indemnity clause and the parties' intent when including such a clause, the court must consider the language used in the provision, the situation of the parties, and the objects to be accomplished. *Employers Mut. Cas. Co. v. Piedmont Supply Co.*, 197 F. Supp. 159 (M.D.N.C. 1961). While an indemnity provision will be construed to cover all losses, damages and liabilities which appear reasonably to have been contemplated by the parties, "it cannot be extended to cover any losses which are neither expressly within its terms nor of such a character that it can reasonably be inferred that they were intended to be within the contract." *Michael v. Huffman Oil Co.*, 190 N.C.App. 256, 270, 661 S.E.2d 1, 10 (2008) (citing *Dixie Container Corp. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968)).

Here, the wording of the Contract's indemnity provision is plain and unambiguous. NVR agreed to indemnify and hold harmless the "Seller" [Stonebridge] against "claims of third parties" for "any liability, loss or damage to persons or property…caused by Purchaser [NVR], its agents and employees." (*See* Contract, ¶ 13(d)). Further, the indemnity provision requires

9

NVR to purchase a liability insurance policy covering "damage to property and persons", as opposed to a performance bond, surety bond or guarantee. (*Id*.) Based upon this plain language of the indemnity provision, the Court finds this to be a classic tort liability indemnity provision. All of the foregoing clauses set forth within the indemnity provision itself indicate plainly that the parties intended that indemnity apply to cover personal injuries and property damage caused by NVR, its agents and employees connected with NVR's home building activity at the Subdivision.

Stonebridge argues mistakenly that the indemnity provision is broad enough to cover Wachovia's claims against Stonebridge for defaulting on its loan obligations. Where a contract is clear and unambiguous, the court cannot, under the guise of construction, insert what the parties elected to omit. *Olive v. Williams*, 42 N.C.App. 380, 383, 257 S.E.2d 90, 93 (1979). There is no express or implicit language in the indemnity provision which demonstrates an intent by the parties to cover Stonebridge's loan obligations to Wachovia if NVR declined to purchase any lots within the Subdivision. Indeed, the interpretation argued by Stonebridge is unreasonable considering that the Contract's liquidated damages clause allowed NVR to withdraw from the Subdivision in exchange for surrendering the Binder as Stonebridge's "only remedy." Thus, not only is such a position unsupported by the plain language of the provision, such a position renders meaningless the liquidated damages clause to which Stonebridge agreed in the Contract. Therefore, Stonebridge's argument would have this Court write into NVR's indemnity an obligation to guarantee Stonebridge's loans if NVR withdrew from the Subdivision which this Court will not do.

Finally, Stonebridge's indemnification claim fails as a matter of law because Stonebridge is seeking to recover damages for direct liability under the guise of an indemnity claim which

allows recovery only for derivative liability for third-party claims.   In North Carolina, indemnification provisions apply to cover derivative liability for third-party claims and not for the direct liability between the parties to a lawsuit.   *See Smith v. Carolina Coach Co.*, 120 N.C.App. 106, 113-14, 461 S.E.2d 362, 366-67 (1995).   Indeed, it has long been the law in North Carolina that one cannot claim through indemnity that which it may claim directly.   *See Dixie Container Corp. v. Dale*, 273 N.C. 624, 627, 160 S.E.2d 708, 711 (1968).   Thus, indemnity may operate only to protect the defendant from claims incurred by third parties caused by the plaintiff and not the loss of the defendant's property caused by the plaintiff directly.   *Id*.

Accordingly, courts have held that general indemnification provisions, such as the one at issue here, are inapplicable to the type of financial third-party claim asserted by Wachovia against Stonebridge.   In *North Carolina Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc.*, 2005 WL 3527050 (M.D.N.C. 2005), the plaintiff entered into an agreement with the defendant whereby the defendant would act as an insurance broker, selling life and health insurance policies to students.   The agreement contained an indemnification clause which provided that:

> [The defendant] agrees to indemnify, defend and hold harmless [the plaintiff] from and against any and all liability, including extracontractual and punitive damages and attorney's fees, incurred in connection with claims or demands for damages of any nature whatsoever, to the extent it is the result of any act or omission, tortious or otherwise of [the defendant].[3]

*Id*. at *9.

Later, the defendant wrote insurance policies for students that did not meet the plaintiff's underwriting guidelines and did not reflect the premium increase required by the plaintiff.   *Id*. at *2.   The defendant's conduct allegedly caused the plaintiff to incur $14 million in losses for the policies that should not have been written.   *Id*. at *9.   Subsequently, the plaintiff made an

---

[3] The Court notes that the indemnification provision in *McKinley* is almost identical to the general indemnity provision at issue in this case.

indemnity claim against the defendant for these losses. *Id.* at *2. The court dismissed the indemnity claim, holding that the plaintiff could not seek by way of indemnity damages that were the result of the defendant's direct breach of contract.

Here, Stonebridge seeks to recover direct damages from NVR's alleged breach of the Contract. Stonebridge alleges that the only reason it defaulted on its loan from Wachovia was because of NVR's termination of the Contract. However, NVR is not a party to the loan agreements between Stonebridge and Wachovia and, as such, has not injured Wachovia as would be required for a valid indemnity claim to exist. Stonebridge has not asserted any plausible facts or allegations of NVR's conduct causing damage or injury to Wachovia, leading Wachovia to sue Stonebridge. In addition, there are no factual allegations in Stonebridge's complaint that NVR prevented Stonebridge from paying Wachovia or from selling lots in the Development to other developers as Stonebridge was allowed to do after the parties executed the 4th Amendment to the Contract in May 2008. Thus, what Stonebridge seeks in actuality is direct damages springing from NVR's alleged breach of the Contract. Therefore, Stonebridge's indemnification claim against NVR is not proper and must fail as a matter of law.

## II.    LEATH'S CLAIMS AGAINST NVR

### A.    Leath's Breach of Contract Claim

Leath's breach of contract claim against NVR is even more speculative and it fails because of its implausibility. As Leath was not a party to the Contract, Leath alleges that he is instead a third-party beneficiary of the Contract. (*See* Leath Compl., ¶ 46). Leath claims that NVR's "willful breach" of the Contract caused the "failure" of the Subdivision, the lawsuit by Wachovia against him and "all of the attendant losses to Stonebridge, its principals and its investors." (*See* Leath Compl., ¶ 54). NVR responds that Leath has failed in any respect to allege or to otherwise plead any facts that establish that Leath is a third party beneficiary of the

12

Contract.  Indeed, NVR argues that there is no basis in law or fact for such a claim as a simple reading of the Contract reveals.  The Court agrees with NVR that such a claim appears to be not only implausible but preposterous under the facts before it.

To establish a breach of contract claim based on the third-party beneficiary doctrine, a complaint's allegations must show:  (1) the existence of a contract between two persons other than the third party beneficiary; (2) that the contract was valid and enforceable; and, (3) that the contract was entered into for the third party's direct, and not incidental, benefit.  *Hospira, Inc. v. Alphagary Corp.*, 194 N.C.App. 695, 702, 671 S.E.2d 7, 13 (2009).  It is not enough that the contract, in fact, benefits the third party, if, when the contract was made, the contracting parties did not intend it to benefit the third party directly.  *Id.*

The rights of an intended third-party beneficiary to a contract are to be determined by examining the contract.  *Roseboro Ford, Inc. v. Bass*, 77 N.C.App. 363, 368, 335 S.E.2d 214, 217 (1985).  The key question is whether the contract's language evidences an intent by the contracting parties to specifically afford the third party with a direct benefit that is enforceable in the courts.  *Id.*  Stated more simply, the question is whether the third-party beneficiary is named or otherwise identified in the Contract.

Here, even a cursory review of the Contract reveals neither a mention of Leath, specifically, nor of any guarantor, generally.  (*See* Contract).  Leath is not a signatory or party to the Contract.  (*See* Contract Preamble and p. 21).  Leath is not identified or entitled to receive notice under the Contract.  (*See* Contract, ¶ 21).  Leath is not named in the Contract for any purpose or in any way.  (*See* Contract).  Furthermore, Leath has not pled any facts nor provided any suggestion as to why he is an intended beneficiary of the Contract.  Therefore, there is no suggestion in the Contract that the parties sought to confer a benefit to Leath.  Accordingly,

Leath's breach of contract claim under a third-party beneficiary theory against NVR fails as a matter of law and is dismissed.

### B.   Leath's Indemnification Claim

The Contract's indemnification clause is not applicable to Leath as a third-party beneficiary as well.   In his indemnity claim, Leath alleges that the Contract's indemnity provision is so broad that "NVR is required indemnify . . . Stonebridge's principals and third party beneficiaries" of which he is one.  (*See* Leath Compl., ¶ 47).   NVR argues that there is no basis in fact or in law to support such a claim of indemnity given that Leath is neither mentioned specifically by name nor generally as a guarantor in the indemnity provision.   The Court, as with Leath's breach of contract claim, finds such a claim implausible and preposterous under the facts before it.

Where there is an express indemnification clause between two parties, it cannot be extended to other parties outside the agreement without some specific reference extending indemnification to the third party.   *See Dixie Container*, 273 N.C. at 627-28, 160 S.E.2d at 711.   Further, when a third-party beneficiary seeks to enforce an indemnification provision, the provision must be construed strictly against the alleged third-party beneficiary.   *Huffman Oil,* 190 N.C.App. at 269, 661 S.E.2d at 10.   Here, because Leath is neither a third-party beneficiary of the Contract nor identified in the indemnity provision, he may not seek indemnity from NVR.

In a similar case, *Candid Camera Video World, Inc. v. Matthews*, 76 N.C.App. 634, 334 S.E.2d 94 (1985), the court considered whether an indemnification clause set forth in a commercial lease should be extended to indemnify non-contracting parties.   *Id.*   The indemnity clause reviewed was a provision whereby the tenant would ". . .hold Landlord harmless from any and all injury or damage to person or property in, on or about the Lease Premises. . .".*Id.*   When the tenant sued the property mall management company – an agent of the landlord – on a theory

of negligence (for a theft that occurred on the Leased Premises), the mall manager attempted to claim that the tenant's indemnity provision protected him as an agent of the landlord from any claims by the tenant.  *Id.*  In reviewing the language of the Lease in question, the court determined that the term "Landlord" included only the owner and not any other entity or person.  *See id.*, 635-36, 95-96.  In short, the mall manager was not included in the definition of "Landlord" and, thus, not entitled to indemnity from the tenant.  *Id.*  Thus, the court held that the indemnity clause (and its protections) did not extend to the mall manager.  *Id.*

Here, the Contract's indemnification clause similarly does not extend to Leath.  The parties to the indemnity clause are clearly defined.  The indemnity provision provides that NVR as "Purchaser" ". . . agrees to indemnify and hold Seller harmless from any liability, loss or damage to persons or property . . ."  (*See* Contract, ¶ 13(d)).  "Seller" is defined in the Contract's preamble as Grace who was later substituted by agreement to Stonebridge.  (*See* Contract Preamble).  Leath is not identified or defined as a "Seller" in the indemnification clause.  (*See* Contract, ¶ 13(d)).  Clearly, Leath is not entitled to indemnification under the Contract and there is a complete absence of facts in Leath's complaint suggesting why he is a party to the Contract's indemnification provision.  Therefore, Leath's indemnification claim against NVR fails as a matter of law and is, therefore, dismissed.

**IT IS THEREFORE ORDERED** that NVR's Motion to Dismiss all of Stonebridge's and Leath's claims against it is hereby **GRANTED**.

This Order has been signed electronically.
The Judge's signature and court's seal appear              United States Bankruptcy Court
at the top of the Order                                              Western District of North Carolina